IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHN ANDREW KISTER,           )
#264274,                      )
                              )
      Plaintiff,                  )
                              )
v.                            )          CASE NO. 2:20-cv-414-ECM-JTA
                              )
JEFFERSON S. DUNN, et al.,    )
                              )
      Defendants.                 )

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.    INTRODUCTION

Plaintiff John Andrew Kister, an inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action alleging he received inadequate medical treatment for seborrheic dermatitis while incarcerated at Elmore Correctional Facility. (Doc. No. 1.) He claims this inadequate treatment violated his Eighth Amendment right against cruel and unusual punishment and Fourteenth Amendment right to equal protection. (*Id*.) As relief, he seeks a Shave Profile Authorization allowing him ½-inch beard growth and $75,000 in compensatory damages. (*Id*. at 7.)

The Complaint names former Alabama Department of Corrections ("ADOC") Commissioner Jefferson S. Dunn[1], ADOC Associate Commissioner Ruth Naglich, Staton Correctional Facility Medical Director Dr. Michael Borowicz, and Staton Correctional

---

[1] John Hamm has replaced Jefferson Dunn as Commissioner of the Alabama Department of Corrections. Thus, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Hamm is automatically substituted as defendant in his official capacity. Former ADOC Commissioner Jefferson Dunn remains a defendant in his individual capacity. The Clerk is DIRECTED to update the docket sheet and caption accordingly.

Facility Health Services Administrator Darryl Ellis as defendants. (*Id*. at 1, 3; *see also* Doc. No. 17 at 1, 4.) On July 6, 2020, the Court issued an Order directing Defendants to file a Special Report addressing Plaintiff's claims. (Doc. No. 6.) On July 22, 2020, Defendants Borowicz and Ellis filed their Special Report (Doc. No. 17), in which they move for summary judgment and provide supporting evidentiary materials, and they later filed supplements to their Report with additional evidentiary materials (Docs. No. 36, 43). Thereafter, Defendants Dunn and Naglich also filed multiple responsive filings (Docs. No. 25, 30, 65), in which they move for summary judgment and provide supporting evidentiary materials.[2]

On December 21, 2020, the Court issued another Order directing Plaintiff to respond to Defendants' filings with affidavits or statements made under penalty of perjury and other evidentiary materials. (Doc. No. 67.) Plaintiff filed numerous responsive documents. (Docs. No. 23, 26, 27, 29, 46, 52, 53, 57, 58, 59, 70, 71.) In its December 21 Order, the Court notified the parties that, absent any objections, it may thereafter treat Defendants' Special Reports, as supplemented, and Plaintiff's response as motions for summary judgment and a response. (Doc. No. 67 at 3.) No objections were filed. Thus, the undersigned will now construe Defendants' Special Reports, as supplemented, as motions for summary judgment and, for the reasons set forth below, RECOMMEND that judgment be GRANTED in favor of Defendants on all claims.

---

[2] None of the documents filed by Defendants Dunn and Naglich are specifically designated as a Special Report. (*See* Docs. No. 25, 30, 65.) However, because their document entitled Supplemental Special Report (Doc. No. 65) is the filing in which they move for summary judgment, the Court will treat that filing as their Special Report for purposes of this Recommendation.

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

"In reviewing whether the nonmoving party has met its burden, the [C]ourt must stop short of weighing the evidence and making credibility determinations of the truth of the matter." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998–99 (11th Cir. 1992) (citation omitted). "Instead, the evidence of the non-movant is to be believed, and all

4

justifiable inferences are to be drawn in his favor." *Id.* at 999 (citations and internal quotations omitted). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## III.   RELEVANT FACTS[3]

The following facts derive from Plaintiff's verified Complaint (Doc. No. 1) and declaration attached thereto (Doc. No. 1-1), the sworn or verified evidentiary materials proffered by Defendants (Docs. No. 30-2 through 30-3; 36-1 through 36-2; 43-1 through 43-2; 65-1 through 65-3), and Plaintiff's verified filings in response (Docs. No. 26-1 through 26-6, 57-2 through 57-10). Although Defendants filed additional affidavits (Docs. No. 17-1, 17-2, 25-1, 25-2, 30-1) and Plaintiff filed additional responsive filings (Docs. No. 23, 26, 27, 29, 46, 52, 53, 57, 58, 59, 70, 71), the Court cannot consider any

---

[3] As noted above, where a fact is in dispute, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton*, 965 F.2d at 998–99. Accordingly, the "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) ("[W]hat we state as 'facts' … for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.").

allegations therein in deciding summary judgment because they are neither sworn nor verified in accordance with 28 U.S.C. § 1746.[4]

Plaintiff has seborrheic dermatitis on his face, neck, and scalp, which makes shaving "irritat[ing]" and "very painful." (Doc. No. 1 at 4, 5.) The pain "feels like a bad sunburn." (Doc. No. 1-1 at 1.) The ADOC generally requires inmates to be clean shaven (Doc. No. 1 at 4) but permits both medical and religious exemptions under certain circumstances (Doc. No. 30-2 at 4; Doc. No. 30-3 at 5, 33).

On December 21, 2018, while Plaintiff was confined at Kilby Correctional Facility, Plaintiff submitted a Sick Call Request that states: "Need prescription for dermatitis. Have always used Triamcinilone cream." (Doc. No. 43-2 at 1.) On December 26, 2018, Plaintiff was issued a Shave Profile Authorization for 180 days, allowing him to shave with clippers instead of a razor and grow a beard ⅛ of an inch in length. (*Id*. at 3.)

More than eight months later, on September 1, 2019, while Plaintiff was confined at Elmore, Plaintiff submitted another Sick Call Request that states:

> I have seborreic dermatitis on my face. Shaving irritates this condition. When I came through Kilby I was issued a no shave/clipper shave profile. I

---

[4] *See, e.g., Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) ("Unsworn statements may not be considered by a district court in evaluating a motion for summary judgment.") (citing *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003)); *McCaskill v. Ray*, 279 F. App'x 913, 915 (11th Cir. 2008) (holding that district court should not have considered unsworn and unverified allegation in deciding summary judgment); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) (noting that omission of the phrase "under penalty of perjury" would "allow[] the affiant to circumvent the penalties for perjury in signing onto intentional falsehoods"); *Grupo Rayco C.A. v. Delta Air Lines, Inc.*, No. 1:20-CV-1952, 2021 WL 1351859, at *9 n. 3 (N.D. Ga. Mar. 16, 2021) ("By omitting the requisite language stating that the certification was made 'under penalty of perjury,' counsel has failed to substantially comply with [§ 1746].").

need to renew this please. I also need to refill my Triamcinolone cream that
I use on the dermatitis.

(*Id*. at 4.) On September 4, 2019, Plaintiff was seen by a nurse regarding his Shave

Profile. (*Id*. at 5.) The nurse noted small lesions on Plaintiff's beard area and that Plaintiff

had a recently expired Shave Profile from Kilby. (*Id*.) The nurse further noted that

Plaintiff "refuse[d]" over the counter Hydrocortisone Cream and Benzoyl Peroxide. (*Id*.)

Plaintiff's Shave Profile from Kilby was renewed. (Doc. No. 57-2 at 1.)

Seven months later, on April 4, 2020, Plaintiff submitted another Sick Call

Request that states:

I have seborreic dermatitis on my face. It is really getting out of hand. I also
have a spot on my back and chest. I need to see a dermatologist please.

(Doc. No. 43-2 at 6.) On April 5, 2020, Plaintiff was seen by a nurse regarding his

dermatitis. (*Id*. at 7.) Plaintiff reported that his skin had "broken out again" and was

"itching." (*Id*.) Handwritten notes from that visit appear to state that "scale[s]" and

"flake[s]" were noted on Plaintiff's face and scalp, but no signs of infection were noted.

(*Id*.)

On April 22, 2020, Dr. Borowicz issued Plaintiff another Shave Profile

Authorization allowing him to shave with clippers instead of a razor and grow a beard ⅛

of an inch in length. (*Id*. at 8; Doc. No. 1-1 at 1.) However, to comply with that length

requirement, Plaintiff had to touch the clipper blades to his skin, which still caused

irritation and pain. (Doc. No. 1 at 5.) Plaintiff asked Dr. Borowicz for medical

authorization to grow a ½-inch beard instead, but Dr. Borowicz denied his request. (*Id*.;

*see also* Doc. No. 26-2.)

On April 24, 2020, Plaintiff submitted a Sick Call Request that states:

> [Dr. Borowicz] was supposed to fill out a no shave no clipper shave profile for me. What I got was a clipper shave profile—something I already have. I need a medical beard profile please. He was also going to order me selenium sulfide cream/shampoo—the brown kind, not the green kind. Please do the profile and ask Dr. Borowicz about the shampoo/cream.

(Doc. No. 43-2 at 9.)

On April 25, 2020 and again on May 18, 2020, Plaintiff submitted an Inmate Grievance that states:

> I saw Dr. Borowicz April 22, 2020 about the seborrheic dermatitis on my face. Razor shaving really irritates this condition, and in September of 2019 I was given a clipper shave profile. The clipper shave is also irritating the condition I have. At the April 22 appointment, I asked Dr. Borowicz for a medical beard profile—no razor or clipper shave. What I got was a one month no shave profile. [] Please issue me a medical beard profile, so I do not have to place the clipper blades on my face.

(Doc. No. 26-3.) A third-party prison official responded, "There is no such thing as a medical beard profile per Department of Corrections guidelines. We as medical can't tell Doc to create a beard profile. The only way to get a beard profile is with a religious beard profile." (*Id.*)

On May 24, 2020, Plaintiff submitted an Inmate Grievance Appeal that states:

> The response says there is no such thing as a medical beard profile to grow a ½ inch beard instead of just an ⅛ of an inch listed on the shave profile authorization. An exception needs to be made. Razor and clipper shaving to an ⅛ of an inch irritates the seborrheic dermatitis and is painful. It makes my face ever redder, embarrassing and humiliating me[] and causing me to be ridiculed. Clipper shaving to a ½ inch would eliminate all of these issues because I could keep it trimmed to ½ inch without putting the clipper blades on my face. Please grant me the exception request.

(Doc. No. 26-4.) On May 27, 2020, Defendant Ellis responded, "Just to clarify, there is no alteration with shaving profile (no medical profile). The length cannot be changed. ADOC policy." (Docs. No. 26-1, 26-4.)

On June 12, 2020—two days before this action was filed—Plaintiff submitted a Sick Call Request that states:

> I hate my skin. I really want to cut off the top layer to see if the layer below is better. I am tired of being ridiculed and harassed about my face. I am sick of it hurting and itching. I seriously hate my skin on my face, back, chest, and pubic area. Deep, smoldering hate. I need to see a dermatologist.

(Docs. No. 26-5; 43-2 at 10.)

On July 14, 2020, Plaintiff was again seen by a nurse regarding his dermatitis. (Doc. No. 43-2 at 11.) Plaintiff requested a "Beard Profile ½ in[ch] length" as well as Triamcilone cream and selenium shampoo—brown type. (*Id*.) The nurse who examined Plaintiff, Nurse Rice, issued him a Shave Profile Authorization until the end of the year, allowing him to grow a beard up to ½ an inch in length. (*Id*. at 12.) When Plaintiff was subsequently transferred to Bullock Correctional Facility approximately one week later, his ½-inch Shave Profile Authorization from Elmore was renewed. (Doc. No. 57-10.)

Dr. Borowicz avers that Plaintiff never requested a ½-inch Shave Profile Authorization from him; that he never discussed a ½-inch Shave Profile Authorization with Plaintiff; and that, although Nurse Rice issued Plaintiff a ½-inch Shave Profile Authorization at Plaintiff's request, he does not think it was medically necessary and at no time thought it was medically necessary. (Doc. No. 43-1 at 4–5.) He further avers that Plaintiff's April 24, 2020 Sick Call Request is the first time Plaintiff ever made any

9

reference to a "medical beard profile" rather than a "clipper shave profile." (*Id*. at 3.) In response, Plaintiff claims that, although none of the above medical personnel charted his request for a ½-inch Shave Profile Authorization—until July 14, 2020—he "did ask for [one] every time." (Doc. No. 57-2 at 1–2.)

According to Plaintiff, ADOC Administrative Regulation 462 allows "certain religious people" to grow a beard up to ½ an inch in length. (Doc. No. 1 at 5.) He claims that Defendant Naglich, who is "over ADOC Health Services[,] has failed to create and implement a policy allowing for a medical beard profile." (*Id*.) Additionally, Defendant Dunn, as Commissioner of the ADOC, "is responsible to promulgate policies to address the medical needs of people like [Plaintiff]" but "[h]e has failed to do so." (*Id*.)

## IV.   DISCUSSION

Plaintiff contends that "[m]aking [him] shave to . . . ⅛ of an inch with [his] condition constitutes cruel and unusual punishment" under the Eighth Amendment. (Doc. No. 1 at 5.) He further contends that "[h]aving a beard regulation for religious people, but not for medical reasons[,] is discriminatory" and violates his right to equal protection under the Fourteenth Amendment. (*Id*. at 6.)

Upon careful consideration of the parties' filings, and for the following reasons, the undersigned finds that judgment should be entered in favor of Defendants on both claims.

### a.   Defendants are entitled to sovereign immunity.

Official capacity suits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, a state

employee may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the immunity, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996). The Eleventh Circuit has specifically recognized that "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abrogated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)). Accordingly, to the extent Plaintiff seeks monetary damages from Defendants in their official capacities, Defendants are entitled to sovereign immunity.[5] *See, e.g., Selensky v. Alabama*, 619 F. App'x 846, 849 (11th Cir. 2015); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277–78 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from a state official sued in his official capacity).

> **b.    Defendants are entitled to qualified immunity.**

Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but

---

[5] Additionally, "neither a State nor its officials acting in their official capacities are 'persons' [subject to suit] under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Carr*, 916 F.2d at 1525 n. 3 ("[S]tate officials acting in their official capacities are not 'persons' subject to liability under 42 U.S.C. § 1983.").

immunity from suit, and the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (citation omitted).

To receive qualified immunity, a defendant first must prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The record establishes that all Defendants were acting within the course and scope of their discretionary authority when the challenged conduct occurred. Thus, the burden shifts to Plaintiff to present evidence that Defendants are not entitled to qualified immunity. *See, e.g., Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To meet this burden, Plaintiff must demonstrate that (1) Defendants committed a constitutional violation; and (2) the constitutional right Defendants violated was "clearly established." *Id.*; *see also Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. [] In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotations and citations omitted). The Court may analyze these elements "in whatever order is deemed most appropriate for the case," and a finding of qualified immunity is appropriate if sufficient evidence has not been presented as to any one of the elements. *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010), *aff'd* 566 U.S. 356 (2012) (citing *Pearson*, 555 U.S. at 241–42).

Upon consideration of this record, the undersigned finds that Plaintiff has failed to demonstrate that any Defendant committed a constitutional violation. Although Plaintiff purports to state an Eighth Amendment deliberate indifference claim as well as a Fourteenth Amendment equal protection claim, he has failed to establish a genuine issue of material fact as to either claim sufficient to overcome qualified immunity or summary judgment.

        i.     <u>Deliberate Indifference Claim</u>

To succeed on an Eighth Amendment deprivation of medical care claim, a plaintiff must demonstrate at least two elements. First, he must demonstrate "an objectively serious medical need . . . that, if left unattended, pos[es] a substantial risk of serious harm." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotations and citations omitted). "[A] serious medical need is [one] diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (citation omitted). Second, he must demonstrate that the defendant's response, or lack thereof, was "poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnosi[s] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (quoting *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

"[T]o show the required subjective intent to punish, [the] plaintiff must demonstrate that the [defendant] acted with an attitude of 'deliberate indifference.'" *Id.* (quoting *Estelle*, 429 U.S. at 105). A finding of deliberate indifference requires that the

defendant "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists [and that he] also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) ("[A] prison official cannot be found liable under the Eighth Amendment . . . unless [he] knows of and disregards an excessive risk to inmate health or safety."). "When the need for treatment is obvious, medical care that is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Simpson v. Holder*, 200 F. App'x 836, 839 (11th Cir. 2006) (quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)). However, a "simple difference in medical opinion" does not constitute deliberate indifference. *Simpson*, 200 F. App'x at 839 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

As an initial matter, courts have routinely held that skin conditions like Plaintiff's, even if itchy and painful, do not constitute objectively serious medical needs under the Eighth Amendment. *See, e.g., Sledge v. Kooi*, 564 F.3d 105, 107 (2d Cir. 2009) (finding plaintiff's eczema did not constitute a serious medical need); *Stepnay v. Goff*, 164 F. App'x 767, 770 (10th Cir. 2006) (noting that, while some skin conditions may be sufficiently serious, "most skin conditions are not intuitively serious"); *Boring v. Kozakiewicz*, 833 F.2d 468, 473 (3d Cir. 1987) (finding plaintiff's seborrheic dermatitis, which caused itchiness and scaling, was not an objectively serious medical need and explaining that, even if a different course of treatment would have more effectively controlled the scaling, the court would not "second-guess the propriety or adequacy of a

particular course of treatment [which] remains a question of sound professional judgment").[6]

Similarly, upon consideration of the record in this case, the undersigned is not persuaded that Plaintiff's seborrheic dermatitis constitutes an objectively serious medical need. Although Plaintiff states throughout his filings that the condition is "irritating" and "painful" when he is forced to touch the affected area with a razor or clippers, he also explains that the pain "feels like a bad sunburn." (Doc. No. 1-1 at 1.) That is not a condition that "pos[es] a substantial risk of serious harm" to Plaintiff if left untreated, *see Taylor*, 221 F.3d at 1258; *see also Burley v. Upton*, 257 F. App'x 207, 210 (11th Cir. 2007) (finding "lower back pain is not the type of serious condition this circuit requires" because it does not pose a substantial risk of serious harm if left untreated), nor is the described pain so severe that the failure to treat it would deprive Plaintiff "of the minimal

---

[6] *See also Reid v. Nassau Cnty. Sherriff's Dep't*, No. 13-CV-1192, 2014 WL 4185195, at *20 (E.D.N.Y. Aug. 20, 2014) ("[A] persistent skin rash or infection does not constitute a 'sufficiently serious' medical need."); *Smith v. Schwartz*, 2011 WL 2115831, at *3 (S.D. Ill. May 26, 2011) ("[Plaintiff's] allegations that he suffered chronic itching, athlete's foot, chafing, peeling skin, and a painful, infected rash on his buttocks . . . do not show a serious medical condition."); *Witherspoon v. Africa*, No. JFM-10-1832, 2010 WL 4183508, at *2 (D. Md. Oct. 25, 2010) ("[D]ry skin and rashes . . . do not comprise serious medical problems."); *Thompson v. Carlsen*, No. 9:08-CV-965, 2010 WL 3584409, at *6 (N.D.N.Y. Aug. 16, 2010) ("Plaintiff's . . . dry, cracked, and itchy skin . . . do[es] not meet the objective standards of a 'serious' medical condition."); *Johnson v. Sullivan*, No. CV-07-00574-ROS, 2010 WL 2850787, at *2 (E.D. Cal. July 19, 2010) ("There is no evidence that the skin condition affected Plaintiff's daily activities or that it caused him substantial pain. Accordingly, Plaintiff has not presented evidence showing his condition qualified as a 'serious medical need.'"); *McKeithan v. Beard*, No. 06-965, 2010 WL 2028091, at *1–5 (W.D. Pa. Apr. 12, 2010) (finding plaintiff's excessive itching and dry skin, even assuming it bled from scratching on occasion, did not constitute a serious medical condition); *Gonzalez-Reyna v. Ellis*, No. 1:09-CV-522, 2009 WL 2421482, at *3 (E.D. Va. July 27, 2009) ("[I]t is doubtful that a skin rash, even one which causes pain and itching, is a sufficiently serious medical need to support an Eighth Amendment violation."); *Myers v. Valdez*, No. 3-05-CV-1799-L, 2005 WL 3147869, at *2 (N.D. Tex. Nov. 17, 2005) (finding allegations of "pain" and "extreme rash [and] discomfort" insufficient to state a claim); *Samuels v. Jackson*, No. 97 Civ. 2420, 1999 WL 92617, at *3 (S.D.N.Y. Feb. 22, 1999) (holding prisoner's "[p]apules, vesicles, pustules, burrows, and intense itching resulting in eczema" was not a serious medical need despite plaintiff's allegations that he experienced "constant scratching of the affected areas, causing open sores[] and abrasions").

civilized measure of life's necessities," *see Brennan v. Thomas*, 780 F. App'x 813, 820 (11th Cir. 2019) (citation omitted). There is nothing in the record to demonstrate that Plaintiff's condition poses "an excessive risk to [his] health or safety," *Campbell*, 169 F.3d at 1363, or causes anything more than discomfort, *see Hunt v. Warden*, 748 F. App'x 894, 900 (11th Cir. 2018) ("[A] prisoner's mere discomfort, without more, does not offend the Eighth Amendment.") (citation omitted).

However, even assuming Plaintiff's uncomfortable condition constitutes a serious medical need, Plaintiff has nevertheless failed to demonstrate that any Defendant was deliberately indifferent to that need. First, there is no evidence whatsoever that Defendants Dunn and Naglich were aware of Plaintiff's medical condition; although Plaintiff proffers a letter he wrote (Doc. No. 57-1), dated June 7, 2020 and stating Defendant Dunn and Naglich's names at the top, there is no proof that Plaintiff actually sent the letter to Defendants or that Defendants received the letter. Regardless, constitutional liability "cannot be predicated upon a claim that [D]efendants failed to investigate a grievance or respond in a particular manner." *Cranford v. Hammock*, No. 1:09-CV-70-MP-AK, 2010 WL 916031, at *2 (N.D. Fla. Mar. 11, 2010) (citing *Baker v. Rexroad*, 159 F. App'x 61, 62 (11th Cir. 2005)). Thus, Plaintiff has failed to demonstrate deliberate indifference by Defendants Dunn and Naglich.

Next, construing the evidence in the light most favorable to Plaintiff and drawing all justifiable inferences in his favor, Plaintiff asked Defendants Borowicz and Ellis for a Shave Profile Authorization allowing him to grow a ½-inch beard and they denied his requests. However, the evidence further demonstrates that (1) Defendant Borowicz issued

Plaintiff a Shave Profile Authorization allowing him to shave with clippers instead of a razor and grow a beard ⅛ of an inch in length (Docs. No. 43-2 at 8; 1-1 at 1); (2) that Shave Profile is the same Shave Profile Plaintiff was issued at Kilby, and which Plaintiff used for approximately 16 months, from December 2018 through April 2020, with no recorded issues; (3) in his September 1, 2019 Sick Call Request, Plaintiff asks only that his "no shave/clipper shave profile" he was issued at Kilby be renewed, with no indication that it had been harmful to him in the nine months prior; and (4) Plaintiff's dermatitis was treated in additional ways, including with Triamcinolone cream and selenium sulfide.

Thus, even accepting as true that Plaintiff specifically asked Defendants Borowicz and Ellis for a ½-inch Shave Profile and they gave him a ⅛-inch Shave Profile instead, there is nothing in the record to demonstrate that they knew such conduct would result in a substantial risk of serious harm to Plaintiff. Indeed, Plaintiff had used the same Shave Profile for at least 16 months prior with no reported—or, at the very least, no *recorded*—problems of which Defendants were aware. Furthermore, the Sick Call Requests and Inmate Request Slips Plaintiff submitted at Elmore are insufficient to notify prison officials of severe pain or a risk to his health or safety sufficient to trigger the Eighth Amendment. (*See* Docs. No. 43-2 at 4 (noting that shaving "irritates" his dermatitis), 6 (noting that his dermatitis was "getting out of hand"), 9 (noting that he "need[ed] a medical beard profile" but providing no reasoning therefor); 26-2 (noting that touching clippers to his face "cause[d] irritation"); 26-3 (noting that his clipper shave profile was "irritating" his condition); 26-4 (noting, for the first time in these documents, that the

dermatitis "is painful" when irritated).); *see also Brennan*, 780 F. App'x at 821 ("[A] plaintiff's statement that he experienced some pain or discomfort is not enough."). Finally, Defendant Borowicz specifically avers that he "at no time thought [a ½-inch Shave Profile] was medically necessary" to treat Plaintiff's condition. (Doc. No. 43-1 at 4.)

Therefore, regardless of whether a ½-inch Shave Profile would have been more effective in lessening Plaintiff's irritation than the course of treatment provided by Defendants—including a different Shave Profile, creams, and shampoos—"[n]o liability arises . . . for 'an official's failure to alleviate a significant risk that he should have perceived but did not.'" *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (quoting *Farmer*, 511 U.S. 825). The fact that Plaintiff was not provided with his preferred treatment does not establish that any Defendant disregarded an excessive risk to his health or safety, and the Court cannot find anything in the record upon which a reasonable factfinder could make that conclusion. *See Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although [the plaintiff] may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference.").[7]

Accordingly, because Plaintiff has failed to demonstrate that any Defendant was deliberately indifferent to a substantial risk of serious harm, Defendants are entitled to

---

[7] *See also Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020):

> With respect to prisoners' medical care . . . we have held that the Eighth Amendment doesn't require it to be "perfect, the best obtainable, or even very good." [*Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991)] (quotation omitted). Rather, we have emphasized, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*. at 1505 (quotation omitted).

qualified immunity and their motions for summary judgment are due to be GRANTED as to Plaintiff's purported deliberate indifference claim.

        ii.    <u>Equal Protection Claim</u>

To overcome summary judgment on an equal protection claim, "a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318–19 (11th Cir. 2006) (citing *Jones v. Ray*, 279 F.3d 944, 946–47 (11th Cir. 2001)). To be "similarly situated," comparators must be "prima facie identical in all relevant respects." *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006). Moreover, in cases challenging the actions of correctional officials, exceptionally clear proof of discrimination is necessary. *Fuller v. Ga. State Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences.[] It implies that the decisionmaker [selected] a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 360 (1991).

Plaintiff contends that, because "certain religious people" are permitted to grow a beard up to ½ an inch in length, not permitting non-religious inmates like himself who receive a Shaving Profile for medical reasons to do the same violates the Equal Protection Clause. (Doc. No. 1 at 6.) As an initial matter, the undisputed evidence demonstrates that

Plaintiff has in fact been permitted to grow a beard up to ½ an inch in length at multiple institutions. (Docs. No. 43-2 at 12; 57-10). Thus, it appears clear that inmates who receive a Shaving Profile for medical reasons are permitted to grow a ½-inch beard if a medical provider deems it warranted.

However, even if that were not the case, Plaintiff has failed to proffer any evidence that he is similarly situated to the "certain religious people" permitted to grow ½-inch beards. Courts have routinely found that similar shaving policies, which treat religious inmates and medical inmates differently, do not violate equal protection because "[a]n inmate claiming a religious exemption from the [prison] grooming policy is not, by definition, similarly situated to inmates receiving a medical exemption from the grooming policy." *Ali v. Quarterman*, 434 F. App'x 322, 325 (5th Cir. 2011); *see also Zook v. Tucker*, No. 4:12-CV-47, 2012 WL 2202925, at *2 (N.D. Fla. Apr. 11, 2012) (finding that inmate who sought religious exemption from prison shaving policy, and claimed that allowing some inmates to grow a ¼-inch beard and not others violated the Equal Protection clause, was not similarly situated to inmates with medical exemptions); *Quezada v. Long*, No. 15-613-VBF, 2015 WL 2189369, at *3 (C.D. Cal. May 11, 2015) ("Plaintiff [who seeks exemption from prison policy for religious reasons] is not similarly situated to inmates who were granted exemptions from the challenged policy on medical grounds."); *Shabazz v. Johnson*, No. 3:12-CV-282, 2015 WL 789200, at *15 (E.D. Va. Feb. 24, 2015) ("[Plaintiff] fails to demonstrate that as an inmate seeking a religious diet he is similarly situated to inmates who require certain diets for medical conditions.")

Like the above courts, the undersigned finds that inmates who qualify for medical exemptions and those who qualify for religious exemptions are not similarly situated because they are not "prima facie identical in all relevant respects." *See Campbell*, 434 F.3d at 1314. The Court finds no evidence in the record refuting this premise, nor is there exceptionally clear proof of invidious discrimination on the part of any Defendant. *See Adams v. Davenport*, No. 2:06-CV-959-WKW, 2012 WL 5497971, at *5 (M.D. Ala. Oct. 5, 2012) ("Plaintiff bears the burden of producing sufficient evidence to show that the actions of Defendants resulted from intentional discrimination."). Accordingly, because "[d]ifferent treatment of dissimilarly situated persons does not violate the equal protection clause," *Campbell*, 434 F.3d at 1314 (citing *E & T Realty v. Strickland*, 830 F.2d 1107, 1109 (11th Cir. 1987)), Defendants are entitled to qualified immunity and their motions for summary judgment are due to be GRANTED as to Plaintiff's purported equal protection claim.

## V.    CONCLUSION

Accordingly, based on the foregoing, the undersigned RECOMMENDS that:

1.      Defendants' Special Reports (Docs. No. 17, 65), which the Court construes as motions for summary judgment, be GRANTED;

2.      Judgment be ENTERED in favor of Defendants; and

3.      This case be DISMISSED with prejudice.

It is further ORDERED that, by August 17, 2023, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or

general objections will not be considered. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 2nd day of August, 2023.


JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE